# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| ENVIRONMENT AMERICA, D/B/A ENVIRONMENT OHIO, AND LAKE ERIE WATERKEEPER, | ) ) ) ) | Civil Action No.: |
| Plaintiffs, | ) ) ) | **COMPLAINT** |
| vs. | ) ) ) | |
| CAMPBELL SOUP SUPPLY COMPANY L.L.C., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

1.      This is a citizen enforcement suit brought by two non-profit environmental organizations, Environment America d/b/a Environment Ohio and Lake Erie Waterkeeper (collectively, "Plaintiffs").  Plaintiffs bring suit on behalf of their individual members against Campbell Soup Supply Company L.L.C. ("Campbell Soup" or "Defendant") to redress and prevent ongoing violations of the federal Clean Water Act ("CWA" or the "Act") that pollute and adversely affect the Maumee River and Lake Erie.

2.      This suit is authorized under Section 505 of the CWA, 33 U.S.C. § 1365, commonly known as the "citizen suit" provision.

3.      Defendant Campbell Soup is an Ohio corporation operating a heat process and canned food facility ("Facility") located in Napoleon, Ohio.

4.     For at least the past five years, Campbell Soup has released and continues to release a variety of pollutants from the Facility into the Maumee River and into unnamed tributaries of the Maumee River at levels that violate the CWA.

5.     Campbell Soup will continue to violate the CWA after the date this Complaint is filed.

6.     Plaintiffs intend this action to encompass post-Complaint violations of the types alleged herein.

7.     Plaintiffs and their individual members place a high value on the health and quality of the Maumee River and its surroundings and on the health and quality of western Lake Erie. They are concerned about the impacts that the pollutants discharged by Campbell Soup have on the health and safety of the river, the lake, and their local environment.  Plaintiffs' members' use and enjoyment of the Maumee River and Lake Erie are adversely affected by the CWA violations described herein.

## NPDES PERMITTING AND CITIZEN ENFORCEMENT UNDER THE CWA

8.     The objective of the CWA "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

9.     Dischargers of industrial wastewater, like Campbell Soup, must comply with permits issued under the National Pollutant Discharge Elimination System ("NPDES"), a federal program established in Section 402 of the Act, 33 U.S.C. § 1342.  In Ohio, the NPDES program is administered by the Ohio Environmental Protection Agency ("Ohio EPA"), subject to the oversight and ultimate authority of the U.S. Environmental Protection Agency ("USEPA").

10.     An NPDES wastewater discharge permit, which is required by federal law to meet certain specified criteria, contains limits on (and often other requirements for) the discharge of allowable pollutants, and contains pollutant monitoring and reporting requirements.

The discharge of any pollutant in violation of an NPDES permit is prohibited by Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and is thus a violation of the Act.

11.    The CWA authorizes citizens who are affected by such violations to commence an enforcement action in federal court against any "person," including corporations, alleged to be in violation of "an effluent standard or limitation." 33 U.S.C. § 1365(a).  By definition, "effluent standard or limitation" includes any condition or requirement of an NPDES permit. 33 U.S.C. § 1365(f).

12.    The CWA authorizes the plaintiffs in such citizen enforcement suits to seek injunctive relief, civil penalties payable to the United States, and their costs of litigation. 33 U.S.C § 1365(a) & (d).

13.    To facilitate citizen oversight of water pollution and to encourage the filing of citizen enforcement suits, the CWA requires the monitoring of pollution discharges and makes the resulting discharge data available to the public.  33 U.S.C. § 1318.

### CAMPBELL SOUP'S PERMIT AND DISCHARGE MONITORING REPORTS

14.    Campbell Soup's operations at the Facility are governed by NPDES Permit No. 2IH00021 (the "Permit").  The Permit requires Campbell Soup to monitor its wastewater effluent and to submit the monitoring results to Ohio EPA on monthly forms known as "discharge monitoring reports" ("DMRs").  Under the CWA, DMRs are required to be signed by a company official under the penalty of perjury and are publicly available.

15.    DMRs submitted by Campbell Soup to Ohio EPA contain information on the levels of certain pollutants in the Facility's wastewater and on other water quality indicators.  These pollutants and water quality indicators, also known as "parameters," include carbonaceous biochemical oxygen demand ("CBOD"), dissolved oxygen ("DO"), E. coli bacteria, phosphorus, nitrogen (as ammonia, NH3), total suspended solids ("TSS"), and oil and grease, among others.

16.     The DMRs Campbell Soup has submitted to Ohio EPA are conclusive evidence of the compliance information reported in those DMRs.

## PARTIES

**Environment Ohio**

17.     Environment America, Inc., is a Colorado non-profit corporation with over 130,000 members nationwide.

18.     Environment America does business in Ohio as Environment Ohio and will be referred to subsequently herein as "Environment Ohio."

19.     Environment Ohio is a "person" within the meaning of 33 U.S.C. § 1362(5), which defines "person" under the CWA to include "corporation."

20.     Environment Ohio has approximately 830 members in Ohio.

21.     Environment Ohio advocates for clean air, clean water, and the preservation of Ohio's natural resources.  Environment Ohio advocates to protect and preserve Lake Erie and the Maumee River specifically.

22.     Among other activities in pursuit of these goals, Environment Ohio researches and distributes analytical reports on environmental issues, advocates before legislative and administrative bodies, conducts public education and membership recruitment campaigns (door to door, over the phone, via social media, and by direct mail), and pursues public interest litigation on behalf of its members.

23.     Environment Ohio has members who live, own homes, own businesses, or recreate in, on, or near the Maumee River and Lake Erie downstream of the Facility.

24.     Environment Ohio brings this suit on behalf of its members who are adversely affected by the Facility's violations of discharge limits for CBOD, DO, phosphorus, nitrogen, E. coli bacteria, TSS, and oil and grease.

4

**Lake Erie Waterkeeper**

25.     Lake Erie Waterkeeper is an Ohio non-profit corporation with approximately 200 members in Ohio, Michigan, Indiana, Pennsylvania, and Ontario, Canada.

26.     Lake Erie Waterkeeper is a "person" within the meaning of 33 U.S.C. § 1362(5), which defines "person" under the CWA to include "corporation."

27.     Lake Erie Waterkeeper advocates for fishable, swimmable, drinkable water for the Lake Erie watershed, which includes the Maumee River.

28.     A primary project Lake Erie Waterkeeper undertakes is prevention of nearshore algal blooms.  Lake Erie Waterkeeper designates the Maumee River as a "priority tributary" for nearshore algal blooms.

29.     Among other activities in pursuit of its organizational goals, Lake Erie Waterkeeper advocates and educates on issues affecting water quality in the Lake Erie watershed and recruits members to assist in these efforts through tabling, meetings, presentations, and direct mail.

30.     Lake Erie Waterkeeper has members who live, own homes, or recreate in, on, or near the Maumee River and Lake Erie downstream of the Facility.

31.     Lake Erie Waterkeeper brings this suit on behalf of its members who are adversely affected by the Facility's violations of discharge limits for CBOD, DO, phosphorus, nitrogen, E. coli bacteria, TSS, and oil and grease.

**Campbell Soup Supply Company**

32.     Campbell Soup Supply Company L.L.C. is a for-profit corporation, incorporated in Delaware and with its headquarters in Camden, New Jersey.

33.     Campbell Soup is a "person" within the meaning of 33 U.S.C. § 1362(5), which defines "person" under the CWA to include "corporation."

34.     Campbell Soup cans soups, beverages, and other food products at the Facility. This involves producing cans for packaging the products, preparing foods for canning, and heat-process canning of the foods. The Facility is surrounded by acres of crop fields in which wheat and other crops are grown for use in the company's food and snack production.

35.     Campbell Soup operates the Facility.

36.     Campbell Soup owns the Facility.

37.     Campbell Soup Supply Company L.L.C. is a subsidiary of Campbell Soup Company, a publicly traded corporation incorporated in Camden, New Jersey.

38.     Campbell Soup Company, the parent corporation, reported annual sales of $8.6 billion for Fiscal Year 2022.

## JURISDICTION, VENUE, AND NOTICE

39.     This Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. § 1365(a)(1) (the CWA citizen suit provision) and 28 U.S.C. § 1331.

40.     Venue lies in this District under 33 U.S.C. § 1365(a)(1) because the Facility is located within this District.

41.     Pursuant to 28 U.S.C. § 2201(a), this Court may issue a declaratory judgment that Campbell Soup has violated its Permit and the CWA, and determining the number of days of violations Campbell Soup has committed.

42.     On July 13, 2023, counsel for Environment Ohio and Lake Erie Waterkeeper mailed a letter (the "Notice Letter," a copy of which is attached as Exhibit 1 and is incorporated by reference herein) by certified mail, return receipt requested, to the following, each of whom received the Notice Letter:

      a.  The Facility Manager of Campbell Soup's Napoleon Plant.  A copy of the return receipt for Campbell Soup is attached as part of Exhibit 2.

    b.   CT Corporation System, the registered agent for Campbell Soup Supply Company L.L.C.  A copy of the return receipt for CT Corporation System is attached as part of Exhibit 2.

    c.   The Administrator of the USEPA, Michael S. Regan.  A copy of the return receipt for the Administrator is attached as part of Exhibit 2.

    d.   The Regional Administrator for Region 5 of the USEPA, Debra Shore.  A copy of the return receipt for the Regional Administrator is attached as part of Exhibit 2.

    e.   The Director of the Ohio EPA, Anne M. Vogel.  A copy of the U.S. Postal Service confirmation of delivery to the Director is attached as part of Exhibit 2.

43.    The Notice Letter satisfies the CWA's pre-suit notice requirements, as set forth in 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.3.

44.    Environment Ohio and Lake Erie Waterkeeper filed this Complaint more than 60 days after the mailing of the Notice Letter, as required by 33 U.S.C. § 1365(b)(1)(A).  For the purpose of the Act's 60-day notice requirement, the Notice Letter was served on July 13, 2023, the date on which it was sent via certified mail, return receipt requested.  40 C.F.R. § 135.2(c).

45.    Environment Ohio and Lake Erie Waterkeeper will serve a copy of this Complaint on the U.S. Attorney General and the Administrator of the USEPA, pursuant to 33 U.S.C. § 1365(c)(3).

46.    As of the time of filing of this Complaint, neither USEPA nor Ohio EPA commenced or is diligently prosecuting a civil or criminal action against Campbell Soup in a court of the United States or a state to require compliance with any of the effluent standards or limitations Plaintiffs allege are being violated at the Facility.

47.     As of the date of service of the Notice Letter, neither USEPA nor Ohio EPA had begun an administrative action to financially penalize Campbell Soup for any of the violations set forth in the Notice Letter.

## FACTUAL BACKGROUND

**The Facility**

48.     Campbell Soup's operations take place at 12-773 State Route 110 in the city of Napoleon, Ohio.

49.     Operations at the Facility include can-making, canning, washing, blending, and filling. The Facility includes buildings used for these operations, as well as offices and restrooms and approximately 406 acres of "spray fields."

50.     The Facility generates wastewater from its container operations, its offices and restrooms, its boiler house and refrigeration units, its vegetable washing and preparation operations, its food blending operations, its can-filling operations, and its cookers and sterilizers.

51.     Wastewater generated at the Facility receives some treatment to remove pollutants before it is discharged into the Maumee River or its tributaries through discharge points designated in the Permit as Outfalls 001, 006, 007, 008, 009, and 099.

52.     Wastewater generated by container operations and wastewater generated by offices and restrooms is sent to the Facility's wastewater treatment plant.

53.     Wastewater generated in boiler house/refrigeration, vegetable washing/prep, blending, filling, and cooking/sterilizing is treated by screening. After screening, this wastewater is either sent to the wastewater treatment plant or it is sent to spray field overland flow treatment systems.

54.     When operating as designed, the wastewater treatment plant treats process wastewater by grit removal, grinding, screening, trickling filtration, flotation, anaerobic digestion, sedimentation, disinfection, and dichlorination, before it is discharged from Outfall 001.

55.     Outfall 001 is a "point source" as defined in 33 U.S.C. § 1362(14).

56.     Process wastewater is treated at the spray field overland flow treatment system by screening, microstraining, and spray irrigation.

57.     Spray irrigation is performed by spraying wastewater via ground-mounted nozzles onto four spray fields. There are 673 nozzles altogether, each of which is designed to spray 20 gallons per minute.

58.     Outfalls 006, 007, 008, and 009 discharge overland flow from spray fields into four unnamed tributaries of the Maumee River, with each outfall discharging to a separate such unnamed tributary.

59.     Outfalls 006, 007, 008, and 009 are each "point sources" as defined in 33 U.S.C. § 1362(14).

60.     The Permit also designates an internal monitoring point as Outfall 099 for the purpose of measuring compliance with the federal limits imposed by USEPA on the wastewater created by the can-making process.

61.     The wastewater discharged into the Maumee River and its unnamed tributaries is also known as the Facility's "effluent."

**The Facility's NPDES Permit Limits**

62.     Once issued, NPDES permits are effective for five years.  They may be modified during the five-year term and must be re-issued upon expiration.

63.     On November 10, 2016, Ohio EPA issued a modification of the Facility's existing Permit. The modified permit, No. 2IH00021*JD ("the 2017 Permit"), became effective on July 1, 2017.

64.     Ohio EPA re-issued the Facility's Permit, No. 2IH00021*KD ("the March 2022 Permit"), on February 15, 2022. The March 2022 Permit became effective on March 1, 2022.

65.     Ohio EPA issued a modification of the March 2022 Permit on September 22, 2022. The modified permit, No. 2IH00021*LD ("the October 2022 Permit") became effective on October 1, 2022.

66.     The October 2022 Permit expires on February 28, 2027.

67.     The 2017 Permit, the March 2022 Permit, and the October 2022 Permit establish effluent limitations and monitoring and reporting requirements for, among other things, discharge parameters at Outfalls 001, 006, 007, 008, 009, and 099.  Violations of these limits and requirements are violations of both the permit and of the CWA.

68.     The 2017 Permit, the March 2022 Permit, and the October 2022 Permit each state in Part III.15, "The discharge of any pollutant identified in this permit more frequently than, or at a level in excess of, that authorized by this permit shall constitute a violation of the terms and conditions of this permit. Such violations may result in the imposition of civil and/or criminal penalties as provided for in Section 309 of the Act and Ohio Revised Code Sections 6111.09 and 6111.99."

## DEFENDANT'S VIOLATIONS OF THE CLEAN WATER ACT

69.     Defendant's violations of the Permit's limits for CBOD, E. coli, phosphorus, nitrogen, TSS, and oil and grease, and Defendant's violations of the Permit's requirement to maintain dissolved oxygen above specified levels, are set forth in detail in the Notice Letter attached as Exhibit 1 and in Counts I through VIII below.  This information is based on publicly available data

for January 2018 through February 2024.  The numeric limits and specified DO levels are taken from Part 1, A. of the Permit.  For each violation of these permit parameters, the following information is provided: (a) the applicable limit or DO requirement; (b) the wastewater measurement in violation of that limit or DO requirement; (c) the location and date on which the violation occurred; and (d) the number of days of violation that resulted.  A violation of a daily maximum or minimum limit constitutes one day of violation; a violation of a monthly average limit constitutes 28 to 31 days of violation (depending on the month); and a violation of a weekly average limit constitutes seven days of violation.  The Notice Letter also lists the source of the information provided, whether from Defendant's DMR data, from the data posted on USEPA's ECHO website, or from a Noncompliance Notification submitted by Defendant to Ohio EPA.  With its existing wastewater treatment system, Campbell Soup will not attain sustained compliance with the permit requirements set forth below.  Unless and until the company either suspends production at the site or implements a new or significantly modified wastewater treatment system, its violations will continue.

**COUNT I:**
**Violations of Numeric CBOD Limits at Outfall 001**

70.    As set forth in Table 1 of the Notice Letter, Campbell Soup violated its monthly average CBOD limit at Outfall 001 for 43 months during the period between February 28, 2018, and April 30, 2023, and violated its daily maximum CBOD limit at Outfall 001 on 101 days during this period, for a total of 1,404 days of violation.

71.    Monitoring information that has become available since the service of the Notice Letter reveals the following additional CBOD violations at Outfall 001:

11

| Date | Limit Type | Permitted Limit | Reported Discharge | Units | Days of Violation |
|---|---|---|---|---|---|
| 5/4/23 | Daily Max. | 40 | 44 | mg/L | 1 |
| 5/31/23 | Monthly Av. | 25 | 26 | mg/L | 31 |
| 7/20/23 | Daily Max. | 40 | 42 | mg/L | 1 |
| 8/10/23 | Daily Max. | 40 | 110 | mg/L | 1 |
| 8/15/23 | Daily Max. | 40 | 58 | mg/L | 1 |
| 8/17/23 | Daily Max. | 40 | 42 | mg/L | 1 |
| 8/24/23 | Daily Max. | 40 | 43 | mg/L | 1 |
| 8/31/23 | Daily Max. | 1520 | 2590 | kg/d | 1 |
| 8/31/23 | Monthly Av. | 25 | 34.9 | mg/L | 31 |
| 1/4/24 | Daily Max. | 40 | 53 | mg/L | 1 |
| 1/18/24 | Daily Max. | 40 | 41 | mg/L | 1 |
| 1/25/24 | Daily Max. | 40 | 53 | mg/L | 1 |
| 1/31/24 | Monthly Av. | 25 | 32.6 | mg/L | 31 |
| 2/8/24 | Daily Max. | 40 | 56 | mg/L | 1 |
| 2/29/24 | Monthly Av. | 25 | 32.5 | mg/L | 29 |

72.     These violations are ongoing.  Because Campbell Soup has not adequately addressed the cause(s) of these CBOD violations, these violations will continue after the filing of this Complaint.  This action addresses all such violations occurring after those listed in the Notice Letter.

**COUNT II:**
**Violations of Numeric Dissolved Oxygen Requirements at Outfalls 001 and 006-009**

73.     The Permit requires Campbell Soup to maintain a dissolved oxygen level of at least 5 milligrams per liter in the effluent discharged from Outfall 001 and the effluent discharged from Outfalls 006-009.  A dissolved oxygen violation that continues across multiple calendar days results in multiple days of violation.

74.     As set forth in Table 2 of the Notice Letter, Campbell Soup violated this requirement at Outfall 001 on 33 occasions, for 43 total days of violation, from August 31, 2021, through April 22, 2023, and violated this requirement at Outfalls 006-009 on 52 occasions, for 85 total days of violation, from July 31, 2018, through August 31, 2022.  This constitutes a total of 128 days of violation.

75.     Monitoring information that has become available since the service of the Notice Letter reveals the following additional DO violations at Outfalls 001, 007, 008, and 009:

| Date | Outfall | Required Minimum | Reported Discharge | Units | Days of Violation |
|------|---------|------------------|--------------------|-------|-------------------|
| 5/10/23 | 001 | 5 | 4.2 | mg/L | 1 |
| 6/12/23 | 001 | 5 | 0.8 | mg/L | 1 |
| 7/4/23 | 007 | 5 | 4.85 | mg/L | 1 |
| 7/6/23 | 007 | 5 | 3.9 | mg/L | 1 |
| 8/10/23 | 001 | 5 | 3.6 | mg/L | 1 |
| 8/11/23 | 001 | 5 | 3.8 | mg/L | 1 |
| 8/12/23 | 001 | 5 | 4.4 | mg/L | 1 |

| 8/21/23 | 007 | 5 | 4.6 | mg/L | 1 |
| 8/24/23 | 001 | 5 | 1.8 | mg/L | 1 |
| 8/25/23 | 009 | 5 | 4.7 | mg/L | 1 |
| 8/30/23 | 001 | 5 | 4 | mg/L | 1 |
| 8/31/23 | 008 | 5 | 4.3 | mg/L | 1 |
| 10/4/23 | 001 | 5 | 2.6 | mg/L | 1 |
| 10/4/23 | 009 | 5 | 4 | mg/L | 1 |
| 12/6/23 | 001 | 5 | 3.3 | mg/L | 1 |
| 12/8/23 | 001 | 5 | 2.9 | mg/L | 1 |

76.     These violations are ongoing. Because Campbell Soup has not adequately addressed the cause(s) of these DO violations, they will continue after the filing of this Complaint. This action addresses all such violations occurring after those listed in the Notice Letter.

**COUNT III:**
**Violations of Numeric E. coli Limits at Outfall 001**

77.     The E. coli limits at Outfall 001 are applicable during the six-month period from May through October.  As set forth in Table 3 of the Notice Letter, Campbell Soup violated its monthly average E. coli limit at Outfall 001 for ten months during the period between June 7, 2018, and September 30, 2022, and violated its weekly average E. coli limit at Outfall 001 for 35 weeks during this period, for a total of 551 days of violation.

78.     Monitoring information that has become available since the service of the Notice Letter reveals the following additional E. coli violations at Outfall 001:

| Date | Limit Type | Permitted Limit | Reported Discharge | Units | Days of Violation |
|------|-----------|-----------------|--------------------|-------|-------------------|
| 5/31/23 | Weekly Mean | 284 | 1733 | MPN/100 ml | 7 |
| 8/14/23 | Weekly Mean | 284 | 1414 | MPN/100 ml | 7 |
| 9/30/23 | Weekly Mean | 284 | 370 | MPN/100 ml | 7 |
| 10/31/23 | Weekly Mean | 284 | 2420 | MPN/100 ml | 7 |

79.     These violations are ongoing.  Because Campbell Soup has not adequately addressed the cause(s) of these E. coli violations, these violations will continue after the filing of this Complaint.  This action addresses all such violations occurring after those listed in the Notice Letter.

### COUNT IV:
### Violations of Numeric Phosphorus Limits at Outfalls 001 and 006-009

80.     As set forth in Table 4 of the Notice Letter, Campbell Soup violated its monthly average phosphorus limit at Outfall 001 for 21 months and its daily maximum phosphorus limit at Outfall 001 on 33 days, during the period between September 30, 2018, and April 30, 2023, and violated its monthly average phosphorus limit at Outfalls 006-009 for 10 months and its daily maximum phosphorus limit at Outfalls 006-009 on 10 days, from August 31, 2019, through September 30, 2022.  This constitutes a total of 988 days of violation.

81.     Monitoring information that has become available since the service of the Notice Letter reveals the following additional phosphorus violations at Outfall 001 and 009:

| Date | Outfall | Limit Type | Permitted Limit | Reported Discharge | Units | Days of Violation |
|---|---|---|---|---|---|---|
| 5/9/23 | 001 | Daily Max. | 1.5 | 1.58 | mg/L | 1 |
| 5/23/23 | 001 | Daily Max. | 1.5 | 1.71 | mg/L | 1 |
| 5/31/23 | 001 | Monthly Av. | 1.0 | 1.15 | mg/L | 31 |
| 6/27/23 | 001 | Daily Max. | 1.5 | 1.77 | mg/L | 1 |
| 6/30/23 | 001 | Monthly Av. | 1.0 | 1.19 | mg/L | 30 |
| 7/11/23 | 001 | Daily Max. | 1.5 | 3.63 | mg/L | 1 |
| 7/13/23 | 001 | Daily Max. | 1.5 | 1.61 | mg/L | 1 |
| 7/31/23 | 001 | Monthly Av. | 1.0 | 1.31 | mg/L | 31 |
| 8/24/23 | 001 | Daily Max. | 1.5 | 1.76 | mg/L | 1 |
| 8/31/23 | 001 | Monthly Av. | 1.0 | 1.01 | mg/L | 31 |
| 9/7/23 | 001 | Daily Max. | 1.5 | 1.54 | mg/L | 1 |
| 9/14/23 | 001 | Daily Max. | 1.5 | 1.54 | mg/L | 1 |
| 9/30/23 | 001 | Monthly Av. | 1.0 | 1.17 | mg/L | 30 |
| 10/5/23 | 001 | Daily Max | 1.5 | 1.78 | mg/L | 1 |
| 10/5/23 | 009 | Daily Max | 1.5 | 1.98 | Mg/L | 1 |
| 10/6/23 | 001 | Daily Max | 1.5 | 1.6 | mg/L | 1 |
| 10/31/23 | 001 | Monthly Av. | 1.0 | 1.27 | mg/L | 31 |

82.     These violations are ongoing.  Because Campbell Soup has not adequately ad-
dressed the cause(s) of these phosphorus violations, these violations will continue after the filing
of this Complaint.  This action addresses all such violations occurring after those listed in the
Notice Letter.

**COUNT V:**
**<u>Violations of Numeric Nitrogen (Ammonia) Limits at Outfall 001</u>**

83.     The nitrogen limits at Outfall 001 are applicable during the six-month period from
May through October.  As set forth in Table 5 of the Notice Letter, Campbell Soup violated its
monthly average nitrogen limit at Outfall 001 for five months during the period between Septem-
ber 4, 2018, and July 5, 2022, and violated its daily maximum nitrogen limit at Outfall 001 on 15
days during this period, for a total of 199 days of violation.

84.     Monitoring information that has become available since the service of the Notice
Letter reveals the following additional nitrogen violations at Outfall 001:

| <u>Date</u> | <u>Limit Type</u> | <u>Permitted Limit</u> | <u>Reported Discharge</u> | <u>Units</u> | <u>Days of Violation</u> |
|------|------------|-----------|------------|-------|-----------|
| 7/11/23 | Daily Max. | 3.5 | 8.1 | mg/L | 1 |
| 7/31/23 | Monthly Av. | 1.6 | 1.98 | mg/L | 31 |
| 7/31/23 | Daily Max. | 90.9 | 110 | kg/day | 1 |
| 9/5/23 | Daily Max. | 3.5 | 5.7 | mg/L | 1 |
| 9/30/23 | Daily Max. | 90.9 | 120 | kg/day | 1 |
| 10/17/23 | Daily Max. | 3.5 | 4.2 | mg/L | 1 |

85.     These violations are ongoing.  In addition, Campbell Soup's nitrogen discharges
from Outfall 001 exceeded the monthly average Summer limits in April and December 2023, and

17

exceeded the daily maximum Summer limits in November and December 2023 and in January 2024. Although these are not permit violations (because they did not occur in the period from May through October), and although the company reports that it is more difficult to meet the nitrogen limits in the colder weather of the winter months, these exceedances are nonetheless indicative of an inability to consistently meet the nitrogen limits. Because Campbell Soup has not adequately addressed the cause(s) of its nitrogen violations, they will continue after the filing of this Complaint. This action addresses all such violations occurring after those listed in the Notice Letter.

**COUNT VI:**
**Violations of Numeric TSS Limits at Outfalls 001, 009 and 099**

86.    As set forth in Table 6 of the Notice Letter, Campbell Soup violated its monthly average TSS limits at Outfalls 001, 009, and 099 for 52 months, and violated its daily maximum TSS limits at Outfalls 001, 009, and 099 on 102 days, during the period from August 16, 2018, to April 30, 2023, for a total of 1,672 days of violation.

87.    Monitoring information that has become available since the service of the Notice Letter reveals the following additional TSS violations at Outfall 001 and 099:

| Date | Outfall | Limit Type | Permitted Limit | Reported Discharge | Units | Days of Violation |
|---|---|---|---|---|---|---|
| 5/4/23 | 001 | Daily Max. | 45 | 50 | mg/L | 1 |
| 5/9/23 | 001 | Daily Max. | 45 | 56 | mg/L | 1 |
| 5/31/23 | 001 | Monthly Av. | 30 | 34 | mg/L | 31 |
| 8/10/23 | 001 | Daily Max. | 45 | 49 | mg/L | 1 |
| 11/7/23 | 001 | Daily Max. | 45 | 57 | mg/L | 1 |

| 12/31/23 | 099 | Daily Max. | 10.51 | 16.77 | kg/d | 1 |
| 12/31/23 | 099 | Monthly Av. | 5 | 12.17 | kg/d | 31 |
| 1/31/24 | 001 | Daily Max. | 45 | 48 | mg/L | 1 |
| 1/31/24 | 099 | Monthly Av. | 5 | 6.862 | kg/d | 31 |

88.     These violations are ongoing.  Because Campbell Soup has not adequately addressed the cause(s) of these TSS violations, these violations will continue after the filing of this Complaint.  This action addresses all such violations occurring after those listed in the Notice Letter.

## COUNT VII:
### Violations of Numeric Oil and Grease Limits at Outfall 099

89.     As set forth in Table 7 of the Notice Letter, Campbell Soup violated its monthly average oil and grease limits at Outfall 099 for eleven months and violated its daily maximum oil and grease limits at Outfall 099 on 12 days, during the period from June 30, 2018, through January 31, 2023, for a total of 347 days of violation.

90.     Monitoring information that has become available since the service of the Notice Letter reveals the following additional oil and grease violations at Outfall 099:

| Date | Limit Type | Permitted Limit | Reported Discharge | Units | Days of Violation |
|---|---|---|---|---|---|
| 6/30/23 | Daily Max. | 5.13 | 9.23 | kg/day | 1 |
| 6/30/23 | Monthly Av. | 3.08 | 4.78 | kg/day | 30 |

91.     These violations are ongoing.  Because Campbell Soup has not adequately addressed the cause(s) of these oil and grease violations, these violations will continue after the filing

of this Complaint.  This action addresses all such violations occurring after those listed in the Notice Letter.

## COUNT VIII:
### Violations of Narrative Standard Against Contributing to Algal Blooms

92.    Section III(2)(E) of the Permit prohibits the discharge of substances "in amounts that are conducive to the growth of aquatic weeds or algae to the extent that such growths become inimical to more desirable forms of aquatic life, or create conditions that are unsightly, or constitute a nuisance in any other fashion."

93.    The National Oceanic and Atmospheric Administration and the National Center for Water Quality Research have determined, for each of the past several years, that a "harmful algal bloom" has formed in western Lake Erie in the summers, and often extending into the fall.  These blooms are "inimical to more desirable forms of aquatic life," "are unsightly," and "constitute a nuisance."

94.    The presence of phosphorus is the critical variable causing the formation and duration of these harmful algal blooms in western Lake Erie.

95.    The Maumee River is the chief source of the phosphorus in western Lake Erie.

96.    Campbell Soup is one of the largest NPDES-permitted sources of phosphorus in the Maumee River.

97.    Campbell Soup's discharge of phosphorus to the Maumee River thus is "conducive to the growth" of the harmful algal blooms.

98.    As set forth in the Notice Letter, Campbell Soup violated the narrative prohibition against discharges of substances in amounts conducive to the formation of harmful algal blooms by contributing to algal blooms occurring over the course of the following time periods:

**2018**: the last week of June through the first week of October;
**2019**: mid-July through the first week of October;

    **2020**: the last week of July through the first week of September;
    **2021**: the last week of July through the last week of October;
    **2022**: the second week of July through the second week of September.

This constitutes a total of 428 days of violation.

  99.  These violations are ongoing.  Because Campbell Soup has not adequately addressed the cause(s) of these violations of this narrative standard, these violations will continue after the filing of this Complaint.  Since the service of the Notice Letter, another large algal bloom formed in western Lake Erie in 2023.  It began in early July, was fully developed by mid-July, reached its peak from mid-August through early September, and continued until mid-October.  This constitutes 92 days of violation.  This action addresses all such violations occurring after those listed in the Notice Letter.

      **THE POLLUTANTS DISCHARGED BY CAMPBELL SOUP ARE HARMFUL**

  100.  The segment of the Maumee River directly downstream from the Campbell Soup Facility's discharges has been classified by the State of Ohio as an impaired waterway pursuant to section 304(l) of the Clean Water Act, 33 U.S.C. § 1314(l).  The Ohio EPA's 2022 Integrated Report finds that this segment of the Maumee is not meeting water quality criteria for E. coli, nitrates, nutrient/eutrophication, algae, and PCBs.[1]  Any discharge of excess pollution to an impaired waterway is a matter of concern, and Campbell Soup's violations are of a type that contributes to the water quality degradation in the Maumee.

  101.  Carbonaceous biochemical oxygen demand is a measure of the extent to which wastewater removes dissolved oxygen from the receiving waters.  Excessive CBOD discharges can contribute to anoxic conditions, and can also contribute to eutrophication, exacerbate the effects of algal formation, and contribute to the toxicity of the algae.

---

[1] https://epa.ohio.gov/divisions-and-offices/surface-water/reports-data/ohio-integrated-water-quality-monitoring-and-assessment-report

102.    The maintenance of adequate dissolved oxygen levels is critical to the health and survival of a wide variety of aquatic organisms.  Discharges of wastewater with low DO levels, like discharges of high CBOD wastewater, can cause reduced oxygen levels in the receiving waters, and can contribute to anoxic conditions.[2]

103.    E. coli bacteria can be harmful to human health and to the health of aquatic organisms and pose a danger to those who swim or otherwise recreate in a waterway with high E. coli levels.[3]  Campbell Soup's E. coli violations contribute to the conditions that have caused this segment of the Maumee to be designated as impaired by the presence of bacteria.

104.    Phosphorus and nitrogen are nutrients that can contribute to harmful algae growth, eutrophication, and unsightly and toxic conditions that pose a threat to human health and aquatic life.[4]  In the Maumee River and western Lake Erie, eutrophication and seasonal harmful algal blooms are commonplace, and it is generally agreed by scientists that, for these waterways, the incidence and severity of these conditions depends primarily on the levels of phosphorus entering them.  Campbell Soup's phosphorus and nitrogen violations contribute to the conditions that have caused this segment of the Maumee to be impaired from eutrophication.  Campbell Soup's phosphorus violations contribute to the formation of harmful algal blooms in western Lake Erie.

105.    The discharge of suspended solids can contribute to the turbidity of the receiving waters, can block the infiltration of sunlight, can contribute to anoxic conditions, and can affect the temperature of the receiving waters.  Turbidity is an issue in the Maumee River, as evidenced by the fact that the river has long been nicknamed "the Muddy Maumee."

---

[2] https://archive.epa.gov/water/archive/web/ html/vms52.html
[3] https://www.epa.gov/system/files/documents/2021-07/parameter-factsheet_e.-coli.pdf
[4] https://www.epa.gov/nutrientpollution/effects-dead-zones-and-harmful-algal-blooms#:~:text=Excess%20nitrogen%20and%20phosphorus%20cause,in%20the%20water%20is%20consumed

106.    High levels of oil and grease can contribute to film on the surface and along the shores of receiving waters, can harm aquatic life by coating or otherwise impairing the functioning of membranes or tissue, and can harm human health if ingested.[5]

## PLAINTIFFS' MEMBERS ARE HARMED BY CAMPBELL SOUP'S VIOLATIONS

107.    The Facility abuts the Maumee River mainstem segment between Tiffin River and Beaver Creek, approximately 43 miles upstream of Lake Erie.  Numerous campgrounds, water access points, and nature preserves are located along the Maumee River within several miles downstream of the Facility.  This includes the Rotary River Nature Preserve approximately four miles downstream of the Facility, and the Laskey Family Nature Preserve approximately 11 miles downstream.

108.    Common recreational activities on or near the Maumee River include kayaking, canoeing, motorboating, swimming, fishing, camping, and hiking.  The approximately 13-mile segment of the Maumee River stretching from the Facility downstream to the Providence Dam at Mary Jane Thurston State Park experiences particularly heavy recreational use.  In summer months, members of the public frequently water ski and go wakeboarding and tubing throughout this stretch of river, and they anchor boats together at sandbars to allow for group swimming and sunbathing.

109.    Plaintiffs Environment Ohio and Lake Erie Waterkeeper have members who live, own homes, or recreate in, on, or near the Maumee River downstream of the Facility, as well as in, on, or near the shores of western Lake Erie.

110.    Plaintiffs' members consider the Maumee River and Lake Erie to be important resources and aesthetically significant fixtures of the area in which they live, and they want them to be as clean, healthy, and vibrant as possible.

---

[5] https://u.osu.edu/lewandowski.52/2016/06/27/1072/

111.    Plaintiffs' members want the Maumee River and western Lake Erie to be subjected to as little pollution as possible, and their enjoyment of these waterways is diminished by their knowledge of the pollution of these water resources.

112.    Plaintiffs have members who devote personal and professional time to improving the water quality of the Maumee River and Lake Erie, and these efforts are adversely affected by Campbell Soup's violations of its NPDES permit.

113.    Tony Sziglaye is a resident of Rothsford, Ohio.  He is a member of both Environment Ohio and Lake Erie Waterkeeper and is a member of the board of directors of Lake Erie Waterkeeper.  Mr. Sziglaye lives less than a mile from the Maumee River and regularly hikes and bikes along the river's shores upstream and downstream of his home.  Mr. Sziglaye kayaks in the heavily used recreational segment of the Maumee River immediately downstream of the Facility near Providence Dam.  He frequently picnics along the Maumee River and relies on it as a source of relaxation and calm.  The pollution of the river makes these activities less enjoyable than they otherwise would be.  Mr. Sziglaye also has an aesthetic and recreational interest in western Lake Erie and is bothered by the excess algae growths that occur there.

114.    Sandy Bihn is a resident of Oregon, Ohio.  She is a member of both Environment Ohio and Lake Erie Waterkeeper and serves as the executive director for Lake Erie Waterkeeper.  Ms. Bihn seeks to have fishable, swimmable, drinkable water for the entire Lake Erie watershed, and has worked in her personal and professional capacity to establish a healthy sturgeon population in the Maumee River.  The pollution of the river, including excess nutrient pollution, threatens the accomplishment of these goals and adversely affects her aesthetic and recreational enjoyment of the river and the surrounding watershed.  Ms. Bihn also has a longstanding aesthetic and recreational interest in western Lake Erie.  In her position at Lake Erie Waterkeeper, she has worked for years to restore and preserve the health and beauty of that waterbody.  The excess algae

growths that occur there adversely affect her enjoyment of Lake Erie and her efforts to restore and preserve Lake Erie for both aquatic organisms and people who want to use the lake.

115.    The frequency with which these and other members of the Plaintiffs participate in recreational activities in and around the Maumee River and Lake Erie, and their enjoyment of those activities, are both reduced by their knowledge of the Facility's pollutant discharge violations and by the effects that the Facility's discharges have on the river and lake.

116.    Plaintiffs' members are concerned that Campbell Soup's Clean Water Act violations pose a threat to public health and to aquatic life and wildlife in and around the Maumee River.  In particular, Plaintiffs have members who avoid the water in the Maumee River and Lake Erie due to concerns of health-related impacts associated with bacteria and algal blooms.

117.    Plaintiffs' members want to preserve the aquatic life and wildlife in, on, and near the Maumee River and in Lake Erie to the greatest extent possible, and for this reason want as little pollution in the river and lake as possible.

118.    The ongoing actual and threatened harm to Plaintiffs' members would be redressed by an injunction, civil penalty, or other relief that prevents or deters further violations of the Facility's Permit and/or that remediates the harm caused to the Maumee River, Lake Erie, or their watersheds by Campbell Soup's violations.

**RELIEF REQUESTED**

Plaintiffs request that this Court:

a.  Declare Defendant Campbell Soup to have violated and to be in continuing violation of the Clean Water Act and the Facility's NPDES permit by committing (i) each of the violations described above in Counts I through VIII, (ii) any additional violations of the same type that occurred before the filing of this Complaint, and (iii) all additional violations of the same type that occur after the filing of this Complaint;

b.  Determine the number of days of violation committed by Defendant under each Count;

c.  Order Defendant to comply with the requirements of the Clean Water Act and the Facility's NPDES Permit that it has been violating, and to refrain from further violations of the effluent standards and limitations at issue in this action;

d.  Order Defendant to implement measures to remedy, mitigate, or offset the harm to the environment caused by the violations alleged above;

e.  Assess an appropriate civil penalty against Defendant for each day of violation of the Clean Water Act and the Facility's NPDES Permit, as provided by 33 U.S.C. §§ 1319(d) & 1365(a) and 40 C.F.R. § 19.4, which impose a penalty of up to a maximum of $64,618 per day;

f.  Award Plaintiffs their costs of litigation (including reasonable attorney and expert witness fees), as provided by 33 U.S.C. § 1365(d); and

g.  Order such other relief as the Court deems appropriate.

Dated: March 20, 2024                    ATTORNEYS FOR PLAINTIFF:


*/s/ Christos N. Georgalis*
Christos N. Georgalis (OH: 0079433)
Flannery | Georgalis, LLC
1375 E. 9th Street, 30th Floor
Cleveland, OH 44114
(216) 367-2095 (phone)
chris@flannerygeorgalis.com

Matthew L. Jalandoni (OH: 0087074)
Flannery | Georgalis, LLC
175 S. 3rd Street, Suite 1060
Columbus, OH 43215
(380) 444-6027 (phone)
mjalandoni@flannerygeorgalis.com

*/s/ Charles C. Caldart*
Charles C. Caldart
Joshua R. Kratka
*Pro hac vice motions to be filed*
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA 02108
(617) 747-4304 (phone)
cccnelc@aol.com
josh.kratka@nelc.org